IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALPHONSO SIMMONS, | : | |
| | : | |
| Petitioner, | : | |
| v. | : | Civil Action No. 16-845-CFC |
| | : | |
| CLAIRE DEMATTEIS, Commissioner, | : | |
| Delaware Department of Corrections, | : | |
| ALAN GRINSTEAD, Bureau Chief, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

## MEMORANDUM OPINION

James B. O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Attorney for Petitioner.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

September 20, 2019
Wilmington, Delaware

---

[1]Commissioner Claire DeMatteis has replaced former Commissioner Robert M. Coupe, an original party to the case. *See* Fed. R. Civ. P. 11(d).

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Alphonso Simmons ("Petitioner"). (D.I. 2) The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 12; D.I. 15) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. BACKGROUND

On November 18, 2013, Petitioner pled guilty to drug dealing and two counts of possession of a deadly weapon by a person prohibited ("PDWBPP"). (D.I. 12 at 2) The Superior Court sentenced Petitioner on January 30, 2014 to a total of thirty-six years of Level V incarceration, suspended after five years for lower levels of supervision. (D.I. 12 at 2) He did not file a direct appeal.

On May 14, 2014, Delaware's Office of Defense Services ("OPD") filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on Petitioner's behalf. The Superior Court denied the motion on April 20, 2015, and denied his motion for reargument on June 17, 2015. (D.I. 12 at 2); *see State v. Anderson et al,* 2015 WL 2067158 (Del. Super. Ct. Apr. 20, 2015); *State v. Banks,* 2015 WL 4400130 (Del. Super. Ct. June 17, 2015). The Delaware Supreme Court affirmed that decision on December 9, 2015. (D.I. 12 at 2); *see Banks v. State,* 129 A.3d 881 (Table), 2015 WL 8481972 (Del. Dec. 9, 2015).

On September 21, 2016, the OPD filed a § 2254 Petition on Petitioner's behalf. Petitioner makes two claims. First, he asserts that his lack of knowledge of an evidence scandal at the Office of the Chief Medical Examiner ("OCME") was material to his

decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970). (D.I. 2) Second, he argues that the Delaware Supreme Court made unreasonable findings of fact during his post-conviction appeal regarding OCME misconduct. The State filed an Answer asserting that the Petition should be dismissed as meritless. (D.I. 12) Petitioner filed a Reply arguing that the Petition warrants habeas relief. (D.I. 15)

## A. OCME CRIMINAL INVESTIGATION

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "drylabbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

2

## II. STANDARD OF REVIEW

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. *See* 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

Finally, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *see also Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000);

3

*Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing

standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable

application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

### A. Claim One: Unreasonable Application of *Brady v. United States.*

In his introduction to Claim One, Petitioner asserts that:

> The Delaware Supreme Court unreasonably failed to identify
> and/or apply the overarching federal law governing the
> voluntariness of a guilty plea. Nowhere in its decision did the
> court even cite to any federal law – constitutional or otherwise.
> Accordingly, it made no findings of fact specific to [Petitioner's]
> case and conducted no voluntariness analysis. Instead, the
> court simply cited to its prior decisions, notably *Aricidiacono
> v. State*, and concluded that [Petitioner] was not entitled to
> relief because he did not plead any basis to avoid the effect
> of his voluntary and knowing plea of guilty and he has not
> suffered an unjust conviction. To the extent the court's
> decision could be construed as incorporating the law and facts
> from *Aricidiacono* by reference, it incorporated an
> unreasonable application of well-established Federal law.

(D.I. 7 at 7)

The Court rejects Petitioner's argument that the Delaware Supreme Court

unreasonably applied clearly established federal law by citing to *Aricidiacono v. State*,

125 A.3d 677 (Del. 2015) rather than directly to *Brady v. United States*. The Delaware

Supreme Court's *Aricidiacono* decision properly cites and articulates *Brady v. United

States*' standard for determining the voluntariness of guilty pleas. *See Aricidiacono*, 125

A.3d at 679. By citing and applying *Aricidiacono* when denying Petitioner's *Brady v.

United States* argument, the Delaware Supreme Court appropriately relied on Delaware

caselaw articulating the proper federal standard applicable to Petitioner's Claim. *See

Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (finding that Supreme Court of

4

Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases which articulated the proper standard derived from Supreme Court precedent). Thus, the issue as to whether the Delaware Supreme Court unreasonably applied *Brady v. United States* in holding that Petitioner's plea was not rendered involuntary by his lack of knowledge about, and the State's late disclosure of, the OCME misconduct is properly before the Court.

In Claim One, Petitioner contends that the Delaware Supreme Court did not comply with *Brady v. State*'s requirement that "all of the relevant circumstances surrounding" the plea must be considered when assessing if his plea was voluntary. (D.I. 7 at 20) He asserts that the Delaware Supreme Court erred by focusing on Petitioner's admission of guilt during the plea colloquy, contending that a "defendant's recitals on the record at the time he entered his guilty plea do not foreclose proof at a later time that those themselves were involuntary," and "the assessment of such proof does not involve any question of guilt or innocence." (D.I. 7 at 20) Specifically, he alleges that,

> [i]n addition to the OCME misconduct itself, the State's failure to disclose that misconduct can render an otherwise voluntary plea involuntary. Each individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including police. This duty extends beyond police to any investigating agency. The state court previously found and the State conceded that evidence of the misconduct at [the] OCME was *Brady v. Maryland* material[2] in that it was relevant to impeachment. Even though,

---

[2]Petitioner's instant argument that the State's assertion it had fulfilled its *Brady v. Maryland* obligation constituted an affirmative misrepresentation for *Brady v. United States* purposes is a twist on the typical *Brady v. Maryland* argument. In many of the Rule 61 proceedings involving the OCME misconduct initially filed in the Delaware state courts, one of the primary arguments was that the State violated the defendants' rights under *Brady v. Maryland* by failing to disclose the ongoing misconduct at the OCME at

5

through no fault of the prosecutor, this evidence was not provided to [Petitioner], the State represented to him that it had satisfied its *Brady* obligation. Accordingly, the deceitful nature of the misconduct by a member of the prosecution team led to the prosecutor's misrepresentation to [Petitioner]. He was entitled to presume that prosecutors had discharged their official duties because they told him they had. Thus, assuming, arguendo, the State does not generally have a constitutional obligation to provide *Brady* material prior to the guilty plea, this Court must recognize, as does the United States Supreme Court, that the State does have a constitutional obligation not to mislead a defendant.

(D.I. 7 at 30-31)

Citing to the First Circuit's decision in *Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006), Petitioner asserts that the OCME misconduct rendered his guilty plea involuntary because it was egregious, antedated Petitioner's plea, is imputed to the State, and was material to Petitioner's choice to plead guilty.[3] (D.I. 7 at 28-34)  In *Ferrara*, the First Circuit held that a defendant may "collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on

---

the time their cases were pending. *See State v. Miller*, 2017 1969780, at *6 (Del. Super. Ct. May 11, 2017). The Delaware courts rejected this argument pursuant to *United States v. Ruiz*, 536 U.S. 622, 629 (2002), explaining that the State does not have a constitutional requirement to disclose material impeachment evidence prior to a defendant entering a guilty plea. *See Miller*, 2017 WL 1969780, at *7. The Court presumes that Petitioner's acknowledgement in this proceeding that the "State does not generally have a constitutional obligation to provide *Brady* material prior to the guilty plea" is due to the Delaware state courts' rejection of his "typical" *Brady v. Maryland* argument.

[3]The United States District Court for the District of Massachusetts has applied *Ferrara's* two-step approach in numerous proceedings brought under 28 U.S.C. § 2255 where the movants sought to revoke their guilty pleas based on the misconduct of forensic scientist Annie Dookhan. In those cases, the movants generally sought to vacate their sentences by arguing that their guilty pleas were obtained in violation "of the Due Process Clause of the Fifth Amendment because of the government's failure to disclose the full range of Dookhan's malfeasance." *United States v. Wilkins*, 943 F. Supp. 2d 248, 254 (D. Mass. 2013).

evidence not available to him at the time of the plea," without distinguishing between evidence that is newly discovered and evidence that was withheld as a result of a *Brady v. Maryland* violation. *Ferrara*, 456 F.3d at 289. The *Ferrara* Court established a two-pronged test for determining if a defendant has a right to rescind his guilty plea because of newly discovered government misconduct: (1) egregious impermissible government misconduct antedated the entry of the plea; and (2) the misconduct influenced the defendant's decision to plead guilty or, in in other words, the misconduct was material to that choice. *See Ferrara*, 456 F.3d at 290.

Petitioner presented essentially the same argument to the Delaware Supreme Court on post-conviction appeal, which denied the argument as meritless. Since the Delaware Supreme Court in Petitioner's case relied on *Aricidiacono* when it denied instant argument, the Court will also reference *Aricidiacono* when analyzing the Delaware Supreme Court's decision under § 2254(d)(1).

In *Aricidiacono*, the Delaware Supreme Court rejected the defendants' due process argument that their pleas were involuntary under *Brady v. United States*, explaining:

> [T]he defendants here submitted no evidence to suggest a natural inference that any misconduct at the OCME (or lack of knowledge of that conduct) coerced or otherwise induced the defendants to falsely plead guilty.
>
> Tellingly, the defendants do not in any way argue that the State knew about the problems at the OCME when they pled guilty and failed to disclose those problems; that the State engaged in any coercive or improper behavior to procure their pleas; or that any of the defendants in fact gave a false admission. The last point bears reiteration: not one of the defendants argues that she was not in fact not in possession of illegal narcotics and that her plea was false. Rather the suggestion is solely that the defendants would not have pled

7

or would have gotten better deals if they had known of the problems at the OCME.

*Aricidiacono*, 125 A.3d at 679. The *Aricidiacono* Court also rejected the argument –

which was premised on the First Circuit's decision in *Ferrara* – that the defendants'

pleas were rendered involuntary due to the "egregious" OCME misconduct that

antedated their pleas, because none of the defendants contended that they "were not in

fact telling the truth when they freely admitted their factual guilt." *Aricidiacono*, 125 A.3d

at 680. Describing *Ferrara*'s "egregious misconduct" rationale as a "gloss on *Brady v.*

*United States*," the Delaware Supreme Court refused to "embrace" the defendants'

"egregious misconduct" argument. Nevertheless, the Delaware Supreme Court noted

that "even if there was conduct at the OCME that could be said to be egregious, we

have determined, in accordance with our prior reasoning in *Ira Brown v. State* and

*Anzara Brown v. State*, that this conduct did not materially affect any of the pleas."

*Aricidiacono*, 125 A.3d at 680 n. 24. The Delaware Supreme Court opined:

> Put simply, the defendants were unable to identify any equitable reason why they should not be held to their pleas. We have no doubt that the defendants and their counsel wish they had known of the problems at the OCME when the defendants voluntarily admitted their guilt and used their acceptance of responsibility to get charges dropped and secure sentences far below the statutory maximum. It may be the case that knowing about the OCME problems would have given the defendants more bargaining leverage. But that possibility is not a basis for concluding that the defendants were unfairly convicted after a voluntary plea. Each of these defendants had every opportunity to claim that she was in fact not guilty, to contend that she did not possess illegal drugs, and to go to trial. To this day, not one advances the contention that she was in fact innocent.

*Aricidiacono*, 125 A.3d at 681.

With respect to the Court's § 2254(d)(1) inquiry in this case, both Parties

acknowledge that the clearly established federal law governing the voluntariness of

guilty plea claims is the standard articulated in *Brady v. United States*. Petitioner,

however, argues that the Court should incorporate *Ferrara*'s approach and consider

undisclosed "egregious government misconduct" preceding the entry of a guilty plea as

a relevant circumstance under *Brady v. United States*, namely, a misrepresentation that

induced Petitioner to enter a guilty plea. The Court is not persuaded. First, *Ferrara*

does not constitute "clearly established federal law" because it is not a decision issued

by the United States Supreme Court. Second, the Court has not uncovered any

Supreme Court precedent adopting *Ferrara*'s rationale equating "egregious undisclosed

government misconduct" with a misrepresentation capable of rendering a guilty plea

involuntary.[4] And finally, the Court has not found any Third Circuit case law mirroring

*Ferrara*'s holding or explicitly adopting its reasoning. Indeed, at least one federal district

court has criticized *Ferrara* as an overly "expansive interpretation of the relevant

_____

[4]In addition to the reasons set forth in the text of the Opinion, the following three
circumstances demonstrate why the *Ferrara* decision has limited applicability in this
particular context. First, the defendant in *Ferrara* asserted he was actually innocent of
the charge to which he pled guilty; Petitioner has not asserted his factual innocence.
*See Ferrara*, 384 F. Supp. 2d 384, 388 (D. Mass. 2005). Second, the prosecutor in
*Ferrara* was actively involved in witness manipulation and suppression of affirmative
evidence directly related to the defendant's innocence; here, the State was not aware of
the OCME misconduct when Petitioner entered his plea and did not actively suppress
that information. *See Ferrara*, 456 F.3d at 291 (the "outrageous conduct" in *Ferrara*
consisted of manipulating a witness, and then "represent[ing] to the court and the
defense that the witness was going to confirm [a] story" inculpating the defendant in a
murder plot, when in fact the witness had provided the government with affirmative
evidence of the defendant's innocence.). Finally, the evidence in *Ferrara* was
exculpatory because it directly implicated the defendant's innocence; as explained in
the text of the Opinion, the OCME misconduct constituted impeachment evidence. *See
Ferrara*, 456 F.3d at 292.

language from *Brady v. United State*."[5] *Hasbajrami v. United States*, 2014 WL 4954596, at \*3 (E.D.N.Y. Oct. 2, 2014).

Even if Petitioner's argument is not considered to be premised specifically on *Ferrara*, but rather, on general due process principles established in *Brady v. United States*, he is not entitled to habeas relief. In *Brady v. United States,* the Supreme Court determined that a guilty plea is not rendered invalid merely because it is entered to avoid a harsher sentence, explaining:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Brady v. United States*, 397 U.S. at 755; *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (explaining a defendant may challenge a conviction based on a guilty plea on the ground that the plea was not "voluntary and intelligent."); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that the "longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative choices of action open to the defendant."). The Supreme Court has noted that a plea is involuntary if it is induced by "actual or threatened physical harm or by mental coercion overbearing the will of the defendant," or if the defendant is so "gripped" by fear or hope of leniency that he cannot "rationally weigh the advantages of

---

[5]Interestingly, "[o]f the federal courts to have addressed post-conviction petitions under *Brady* and *Ferrara* in the wake of the Dookhan scandal, not one has vacated a guilty plea." *Castro v. United States*, 272 F. Supp. 3d 268, 274 (D. Mass. 2017).

going to trial against the advantages of pleading guilty." *Brady v. United States*, 397

U.S. at 750   However, a plea is not involuntary "whenever motivated by the defendant's

desire to accept the certainty or probability of a lesser penalty rather than face a wider

range of possibilities extending from acquittal to conviction and a higher penalty

authorized by law for the crime charged." *Id.* at 751.

Significantly, "the voluntariness of [a defendant's] plea can be determined only by

considering all of the relevant circumstances surrounding it." *Brady v. United States*,

397 U.S. at 749.  While the Supreme Court has not articulated a list of the "relevant

circumstances" to be considered when assessing the voluntariness of a plea, the

Supreme Court has noted that a plea is not unintelligent just because later events prove

that going to trial may have been a wiser choice:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.

*Brady v. United States*, 397 U.S. at 756–57. In *McMann v. Richardson*, 397 U.S. 759,

769-70 (1970), the Court reaffirmed this principle while underscoring the inherent risk of

entering a guilty plea:

> [T]he decision to plead guilty before the evidence is in
> frequently involves the making of difficult judgments. All the
> pertinent facts normally cannot be known unless witnesses
> are examined and cross-examined in court. Even then the
> truth will often be in dispute. In the face of unavoidable
> uncertainty, the defendant and his counsel must make their
> best judgment as to the weight of the State's case . . . Waiving
> trial entails the inherent risk that the good-faith evaluations of
> a reasonably competent attorney will turn out to be mistaken
> either as to the facts or as to what a court's judgment might
> be on given facts.

The Court has also advised that

> [t]he rule that a plea must be intelligently made to be valid
> does not require that plea be vulnerable to later attack if the
> defendant did not correctly assess every relevant factor
> entering into his decision. A defendant is not entitled to
> withdraw his plea merely because he discovers long after the
> plea has been accepted that his calculus misapprehended the
> quality of the State's case.

*Brady v. United States*, 397 U.S. at 757. In other words, "the Constitution, in respect to

a defendant's awareness of relevant circumstances, does not require **complete**

knowledge of the relevant circumstances, but permits a court to accept a guilty plea . . .

despite various forms of misapprehension under which a defendant might labor."

*United States v. Ruiz*, 536 U.S. 622, 630 (2002) (emphasis added).

Finally, it is well-settled that a petitioner challenging the voluntary nature of his

plea on habeas review faces a heavy burden. *See Zilich v. Reid*, 36 F.3d 317, 320 (3d

Cir. 1994). The "representations of the defendant, his lawyer, and the prosecutor at [a

plea] hearing, as well as any findings made by the judge accepting the plea, constitute a

12

formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, there is

> no requirement in the Constitution that defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the state would have had a weaker case than the defendant had thought or that he maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

*Brady v. United States*, 397 U.S. at 757.

After reviewing the Delaware Supreme Court's decision within the aforementioned legal framework, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Brady v. United States* and its progeny by holding that Petitioner's lack of knowledge about the OCME misconduct did not render his guilty plea involuntary.[6] Instead, the Delaware Supreme Court considered the "relevant circumstances" required by *Brady v. United States* when assessing the voluntariness of Petitioner's plea. For instance, the Delaware Supreme Court considered the substantial benefit Petitioner derived from pleading guilty, as demonstrated by its statement that, "[a]s to [the other] defendants, the State notes the substantial benefits the defendants obtained by the plea process, with most defendants obtaining a plea to a greatly

---

[6]In this proceeding, Petitioner states that "his present claim does not contradict the statements he made during his plea colloquy," and he also states that he is not contradicting "any assertion made during the plea colloquy that the attorney did so advise him [of the rights he was waiving by entering the plea]." (D.I. 7 at 21 & n. 82) Given Petitioner's concession, the Court accepts as correct the Delaware Supreme Court's determination that Petitioner freely admitted his guilt during the plea colloquy, thereby rendering an independent analysis of Petitioner's plea colloquy under *Blackledge* unnecessary.

reduced set of charges and to sentences far below that which they could have received had they gone to trial." *Aricidiacono*, 125 A.3d at 680. Here, Petitioner was charged with drug dealing, aggravated possession, three counts of illegal possession of a controlled substance, two counts of PDWBPP, possession of drug paraphernalia, possession of a firearm or firearm ammunition by a person prohibited, and possession of a weapon with a removed, obliterated or altered serial number. (D.I. 12 at 1) In exchange for pleading guilty, the State dropped the other eight charges against him, which reduced the maximum sentence he faced. (D.I. 12 at 3)

Additionally, the Delaware Supreme Court stated it was "adher[ing]" to its prior decision in *Brewer v. State* in rejecting Petitioner's argument[7] and, in *Brewer*, the Delaware Supreme Court opined:

> In his guilty plea colloquy, Brewer affirmed that he was "guilty of possession with intent to deliver cocaine." At no point has Brewer argued that he was actually innocent. As we emphasized in affirming the denial of Brewer's first motion for postconviction relief, Brewer's guilty plea was knowing and voluntary. Brewer is therefore bound by the statements he made to the Superior Court before his plea was accepted and he is prevented from reopening his case to make claims that do not address his guilty and involve impeachment evidence that would only be relevant at trial.
>
> Brewer's reliance on decisions based upon language in *Brady v. United* States does not change this result. In *Brady*, the United States Supreme Court held that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." The Court clarified that "[o]f course, the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." **As long as the defendant can "with the help of counsel, rationally weigh the advantages of going to trial against**

---

[7]*Aricidiacono*, 125 A.3d at 680.

> the advantages of pleading guilty," the Court determined
> there is no constitutional cause for concern.
>
> Brewer has failed to allege any improper coercion that
> undermined his ability to rationally weigh the advantages
> or disadvantages of trial. Nothing in Brewer's opening
> brief suggests that he was strong-armed by State agents.
> Instead, Brewer claims that the positive OCME drug
> results were a significant factor in his decision to plead
> guilty and that he would not have pled guilty if he had
> known of the misconduct at the OCME. Brewer fails,
> however, to tie any of the OCME misconduct to the facts
> of his case. Brewer has not shown that his guilty plea
> was the result of improper coercion and does not claim
> to be actually innocent.

*Brewer v. State*, 119 A.3d 42 (Table), 2015 WL 4606541, at *2-*3 (Del. July 30, 2015)

(emphasis added).

The *Brewer* excerpt demonstrates that, as clearly mandated by *Brady v. United States*, the Delaware Supreme Court considered if Petitioner entered the plea upon the advice of competent counsel. The excerpt also demonstrates that the Delaware Supreme Court considered, and concluded, that the unrelated general OCME misconduct did not amount to improper coercion and did not affect Petitioner's awareness of the direct consequences of pleading guilty. The Delaware Supreme Court explained that "the defendants here submitted no evidence to suggest a natural inference that any misconduct at the OCME (or lack of knowledge of that conduct) coerced or otherwise induced the defendants to falsely plead guilty." *Aricidiacono*, 125 A.3d at 679. As the Court explains in its discussion regarding Claim Two, the Delaware Supreme Court reasonably determined the facts by concluding that Petitioner failed to demonstrate that his case was tainted by the OCME misconduct. Consequently, the Delaware Supreme Court's refusal to issue a *per se* determination that the general

15

existence of OCME misconduct was sufficient to render Petitioner's guilty plea involuntary, without proof that there was any actual OCME misconduct with respect to the evidence in Petitioner's case, did not violate *Brady v. United States*.

Similarly, the Delaware Supreme Court did not violate *Brady v. United States* by placing great significance on Petitioner's admission of guilt during the plea colloquy, because it considered this fact in conjunction with Petitioner's failure to assert his factual innocence during or after the plea. An admission of guilt "is entitled to significant (albeit not dispositive) weight when, as now, [a defendant] seeks to vacate that plea through a collateral attack." *Wilkins*, 754 F.3d at 30. "Such an admission is especially compelling because [he] neither attempts to explain it away nor makes any assertion of factual innocence." *Id.* Placing significance on Petitioner's admission of guilt was also appropriate since he gave a post-*Miranda* statement that "he knew the guns were in his bedroom and [] confessed that he sold drugs for money because he did not have a job." (D.I. 12 at 3)

Given Petitioner's failure to demonstrate a link between the misconduct and his case, Petitioner's unawareness of the unrelated general OCME misconduct only amounted to one of the "various forms of misapprehension under which a defendant might labor."[8] *See Ruiz*, 536 U.S. at 630. As Petitioner concedes, and the body of

---

[8]Indeed, Petitioner could have gone to trial, or sought permission to enter a plea of *nolo contendere*, which would have permitted him to accept punishment for the charged offense without admitting his guilt. *See* Del. Super. Ct. Crim. R. 11(2)(b) ("A defendant may plead nolo contendere or guilty without admitting the essential facts constituting the offense charged with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice."); *see also North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the later element is not a constitutional requisite to the

Delaware caselaw concerning the OCME misconduct demonstrates, the OCME

investigation constitutes impeachment evidence that would only be useful if Petitioner

had decided to go to trial. *See Ira Brown*, 108 A.3d at 1206-07. In *Ruiz*, the United

States Supreme Court specifically held that the Government is not constitutionally

required to disclose material impeachment evidence prior to entering a plea agreement

with a criminal defendant. *See Ruiz*, 536 U.S. at 633. The *Ruiz* Court explained:

> It is particularly difficult to characterize impeachment
> information as critical information of which the defendant must
> always be aware prior to pleading guilty given the random way
> in which such information may, or may not, help a particular
> defendant. The degree of help that impeachment information
> can provide will depend upon the defendant's own
> independent knowledge of the prosecution's potential case –
> a matter that the Constitution does not require prosecutors to
> disclose.

*Ruiz*, 536 U.S. at 629. The Supreme Court also recently reaffirmed that "a guilty plea

makes [case-related constitutional defects that occurred prior to the entry of the guilty

plea] irrelevant to the constitutional validity of the conviction," "[b]ecause the defendant

has admitted the charges against him." *Class v. United States*, 138 S.Ct. 798, 805-06

(2018).

As suggested by the aforementioned jurisprudence, if unknown non-exculpatory

conduct at the OCME was not material to a defendant's decision to plead guilty, that

same non-exculpatory misconduct cannot provide a basis for rendering a defendant's

---

imposition of criminal penalty. An individual accused of crime may voluntarily,
knowingly, and understandingly consent to the imposition of a prison sentence even if
he is unwilling or unable to admit his participation in the acts constituting the crime.").
Petitioner did not do so, and the Delaware Superior Court was entitled to rely on his
solemn admission that he committed the acts alleged by the State in rejecting his
argument that the OCME misconduct rendered his plea involuntary. *See Brady v.
United States*, 397 U.S. at 757.

counseled decision to enter a guilty plea involuntary, especially when that defendant participated in a plea colloquy in open court, freely acknowledged his guilt, and has not asserted his factual innocence. Although knowledge of the OCME misconduct would have provided Petitioner with "more bargaining leverage," it cannot be said that the lack of that knowledge rendered his guilty plea involuntary. Rather, Petitioner's argument amounts only to a miscalculation of the strength of the State's case.

In sum, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Brady v. United States* in holding that Petitioner's guilty plea was not rendered involuntary because of Petitioner's lack of knowledge about the OCME misconduct. Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d)(1).[9]

### B. Claim Two: Unreasonable Finding of Fact

In affirming the Superior Court's denial of Petitioner's Rule 61 motion, the Delaware Supreme Court made the following observations about the misconduct at the OCME:

> In 2014 an investigation by the Delaware State Police and the Department of Justice revealed that some OCME employees had stolen drug evidence stored at the OCME due in large part to flawed oversight and security. To date, those problems, although including substantial evidence of sloppiness and allegations of "drylabbing," do not in any way involve evidence-planting. To the contrary, much of the

---

[9]Given the Court's conclusion that Petitioner's lack of knowledge about the OCME misconduct did not "induce" him to plead guilty, the Court need not address: (1) whether misconduct engaged in by forensic lab employees and, in particular, the OCME misconduct in this case, can be imputed to the State; and (2) whether the State committed an affirmative misrepresentation when it informed Petitioner it had satisfied its *Brady v. Maryland* obligations.

uncovered misconduct seemed to be inspired by the reality
that the evidence seized from defendants in fact involved
illegal narcotics, and the temptation this provided to certain
employees to steal some of that evidence for their personal
use and for resale.     Those problems have now been
discussed in several judicial opinions, and in publicly available
investigative reports.

*Aricidiacono*, 125 A.3d at 677-78.   The Delaware Supreme Court held that "the poor

evidence-handling practices at the OCME, however regrettable," did not entitle

defendants who had freely admitted their guilt when pleading guilty to relief. *Id.* at 678-

79.  The Delaware Supreme Court then stated, even if it assumed that the conduct at

the OCME amounted to egregious government misconduct, "this conduct did not

materially affect any of the pleas." *Id.* at 680 n.24

        In Claim Two, Petitioner contends that the Delaware Supreme Court

"incorporated unreasonable [factual] findings" from *Aricidiacono* that "minimized the

OCME misconduct and belittled the unrealistic burden of proof it placed on the

petitioners." (D.I. 7 at 24)  Petitioner's true complaint appears to be what he terms "the

state court's misguided fixation on [Petitioner's] admission of guilt rather than on the

voluntariness of that admission." (D.I. 7 at 21)  His statement that "[i]t is inconceivable

that the facts which the state court ignored, belittled or misconstrued are not relevant to

a finding that, but for the State's failure to disclose evidence of government misconduct,

there is a reasonable probability that [Petitioner] would not have pled guilty" (D.I. 15 at

9) also appears to challenge the Delaware Supreme Court's refusal to characterize the

OCME misconduct as "egregious undisclosed government misconduct" in its *Brady v.*

*United States* analysis.  To the extent this portrayal is an accurate summary of

Petitioner's argument in Claim Two, the Court has already rejected the argument in its

                                                19

discussion of Claim One. Moreover, this argument fails for the simple reason that the Delaware court's reasonable application of federal law rendered unnecessary any need to delve further into OCME employee misconduct or the integrity of the drug evidence in case.

Even if Petitioner's factual challenge is more than a rehashing of Claim One, it is unavailing. Petitioner appears to be dissatisfied with the state courts' description of the specific instances of OCME misconduct, as indicated in his chart depicting "State Court's Unreasonable Findings" versus "Actual Facts." (D.I. 7 at 25-28) He asserts that the state courts' findings "either contradicted or understated significant facts in the record." (D.I. 7 at 25) In short, he appears to contend that the Delaware Supreme Court unreasonably determined there was an insufficient link between the OCME misconduct and his case. (D.I. 7 at 23)

Since Claim Two challenges the factual basis of the Delaware Supreme Court's decision, the relevant inquiry is whether that decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In making this determination, the Court must presume that the Delaware Supreme Court's factual findings are correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

After reviewing Petitioner's argument in context with the record, the Court concludes that Petitioner has failed to provide clear and convincing evidence rebutting the Delaware Supreme Court's factual determination that Petitioner failed to demonstrate a sufficient link between the general OCME misconduct and his case.

Theresa Moore was the chemist who tested the drugs in this case. Petitioner concedes that the there is no evidence that Moore engaged in misconduct, but asserts that her credibility was compromised because "she was on the list of potential witnesses in the Daneshgar case who had credibility issues." (D.I. 7 at 16, 33) Additionally, the police field tested all the seized suspected crack and powder cocaine, which tested positive for cocaine, and Petitioner gave a post-*Miranda* statement confessing that he sold drugs for money and that he abused cocaine. (D.I. 12 at 3) Considering all of these circumstances together with Petitioner's failure to assert his factual innocence, the Court cannot conclude that the Delaware Supreme Court unreasonably determined the facts by holding that the existence of overall misconduct at the OCME was insufficient to establish that Petitioner's case was tainted by the same misconduct.

As explained by the Superior Court in *State v. Irwin*, just one of the over 700 Delaware post-conviction cases involving the OCME misconduct, and relied on by the *Aricidiacono* Court:[10]

> To the extent that there are discrepancies between the drugs seized from a defendant and those tested by the lab, the individual possibly responsible for that conduct has not been identified. [] [A]s best the Court can ascertain, and the parties have not provided evidence to the contrary, none of the cases in other jurisdictions that have led to the investigation of a particular crime lab have ever resulted in all of the evidence being found unreliable and inadmissible simply because that evidence was stored or tested at the lab that has been compromised.

> \*                    \*                    \*

---

[10]Citing *Irwin*, the *Aricidiacono* Court stated that, "[i]n our prior decisions, we found that when defendants freely admitted their guilt by admitting that they possessed illegal narcotics, their lack of knowledge that the OCME's evidence-handling practices were seriously flawed and that  some OCME employees had engaged in malfeasance, did not invalidate their pleas." *Aricidiacono*, 125 A.3d at 678-78.

> There is no evidence to date to suggest that proper testing of drugs submitted did not occur, or that the chemists were submitting false reports, or that critical evidence was withheld by the lab, or that there was any misconduct by the police in violation of a defendant's rights. When the smoke clears, what we have is a lab that suffered from systematic failures in protocol resulting in evidence being stolen, for either sale or personal consumption, and in some instances replaced with other drugs. While the defendants urge this Court to find any evidence stored at the OCME drug lab is ipso facto unreliable due to a lapse in management and protocol, the Court finds that such a blanket ruling is inappropriate.

*State v. Irwin*, 2014 WL 6734821, at *7, *9 (Del. Super. Ct. Nov. 17, 2014). Accordingly, the Court will deny Claim Two.

### C. Request for Evidentiary Hearing

Petitioner "requests that this Court conduct an evidentiary hearing and allow full briefing on his claim." (D.I. 2 at 17; D.I. 7 at 34) Additionally, Petitioner asks that, in the event the Court denies him habeas relief, it "order the State to retest evidence; order the State to produce evidence envelopes, all chain of custody records and any other discovery related to the evidence and its handling." (D.I. 5 at 35) Having determined that the instant Petition does not warrant relief under § 2254(d)(1) and (2), the Court will deny Petitioner's request for an evidentiary hearing and additional discovery. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into those standards in deciding whether an evidentiary hearing is appropriate.").

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing

of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find its assessment of Petitioner's constitutional claims to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED** without an evidentiary hearing. An appropriate Order will be entered.